UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND, INDIANA

| | | |
|---|---|---|
| KIRIAKI KOULA TSAHAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:21-cv-00279-JTM-JPK |
| | ) | |
| COMMUNITY FOUNDATION OF | ) | |
| NORTHWEST INDIANA, INC., and | ) | |
| ST. CATHERINE HOSPITAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' ANSWER TO THE
THIRD AMENDED COMPLAINT FOR DAMAGES**

Defendants, Community Foundation of Northwest Indiana, Inc. and St. Catherine Hospital, Inc., (collectively, "Defendants") state their Amended Answer to Third Amended Complaint for Damages of Plaintiff Kiriaki Koula Tsahas ("Plaintiff"), as follows:

**I. INTRODUCTION**

1.    This is a civil action for damages and other relief brought by plaintiff, Kiriaki Koula Tsahas, to redress violations of her rights under the anti-retaliation provisions of the False Claims Act, 31 U.S.C. §§ 3730(h), and her rights under the laws of the State of Indiana.

**ANSWER:** Defendants admit that Plaintiff alleges violations of the False Claims Act and alleges violations of Indiana statutory and common law, but Defendants deny that they committed any violations under the FCA or Indiana law, deny that Plaintiff has a valid claim for relief under Indiana statutory law, deny Plaintiff has a valid claim under Indiana common law for retaliatory discharge; and deny that Plaintiff is entitled to any relief. In further support for their position, Defendants reference their Motion for Partial Dismissal, filed concurrently with this Answer.

## II. Jurisdiction and Venue

2.    This Court has jurisdiction over this case under 31 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C. § 1331 (Federal Question). Retaliation against an employee for reporting or attempting to report false claims in relation to the Indiana Medicaid program is prohibited by Ind. Code § 5-11-5.7-1 *et seq*. and Ind. Code § 12-15- 24-1 *et seq.*, over which the court has jurisdiction pursuant to 31 U.S.C. § 3732(b). The Court has pendent jurisdiction over other claims arising under the laws of the State of Indiana.

**ANSWER:** Defendants admit that this Court has jurisdiction to address causes of action for retaliation under the False Claims Act, and pendent jurisdiction for Plaintiff's claim of defamation under Indiana law. Defendants admit that Plaintiff has brought pendent claims under Indiana statutory law (Indiana Medicaid) and common law (retaliatory discharge), but Defendants deny that her Medicaid and retaliatory discharge claims are valid, and therefore, deny that such jurisdiction is appropriate. Defendants further reference their Motion for Partial Dismissal filed concurrently herewith.

3.    Under 31 U.S.C. § 3732(a), the Northern District of Indiana is the proper venue for this case because it is the judicial district in which the events that gave rise to the Plaintiff's claims occurred, as well as the judicial district where the defendant's hospital is located.

**ANSWER:** Defendants admit that venue is proper, but deny that Plaintiff's claims have merit and deny that the alleged events occurred.

2

### III. PARTIES

4.    Plaintiff Kiriaki Koula Tsahas is a U.S. Citizen residing in the State of Illinois. Plaintiff is a licensed pharmacist, and from April, 1994, to November, 2019, was an employee of St. Catherine's (sic) Hospital, Inc., which is located in Lake County, Indiana.

**ANSWER:** Defendants admit that St. Catherine Hospital is located in Lake County, Indiana and employed Plaintiff from April, 1994, to November, 2019. Defendants lack knowledge and information sufficient to form a belief about the truth of the remaining allegations in Paragraph 4.

5.    Prior to the sudden termination of her employment, Plaintiff had been promoted to Director of Pharmacy at St. Catherine Hospital in East Chicago, Indiana. Part of Plaintiff's duties were to ensure the implementation of, and compliance with, the Federal 340B program.

**ANSWER:** Defendants admit that Plaintiff served as Director of Pharmacy at St. Catherine Hospital, and that her duties included, among other responsibilities, St. Catherine Hospital's compliance with the Federal 340B program.  Defendants deny the remaining allegations in Paragraph 5.

6.    Defendant Community Foundation of Northwest Indiana, Inc. (CFNI) is an Indiana not-for-profit organization that operates Community Healthcare System, which is comprised of (sic) several not-for-profit hospitals, including St. Catherine Hospital in East Chicago, Indiana, and Community Hospital in Munster, Indiana.

**ANSWER:** Defendants admit that CFNI is a not-for-profit organization, and that Community Healthcare System comprises several hospitals.  Defendants further state that CFNI is

a parent organization of St. Catherine Hospital and Community Hospital. Defendants deny that CFNI operates Community Healthcare System.

7.    Defendant St. Catherine Hospital, Inc., is an Indiana nonprofit corporation operating a hospital commonly known as "St. Catherine Hospital" located at 4321 Fir Street East Chicago, Indiana 46312. The Center for Medicare and Medicaid Services has assigned St. Catherine Hospital a unique ten (10) digit National Provider Identifier ("NPI number").

**ANSWER:** Defendants admit the allegations in Paragraph 7.

## IV. GENERAL ALLEGATIONS

### A. The Federal 340B Drug Discount Program and Disproportionate Share payments.

8.    The Federal 340B drug discount program ("340B Program") was initially enacted as part of the Veterans Health Care Act of 1992 and expanded under the Patient Protection and Affordable Care Act of 2010.

**ANSWER:** Defendants admit the allegations in Paragraph 8.

9.    The State of Indiana participates in the 340B Program in accordance with a State Plan prepared and implemented by the Indiana Family and Social Services Administration (FSSA).

**ANSWER:** Defendants deny the allegations of Paragraph 9.

10.    The 340B Program allows safety-net providers, called "covered entities," to purchase prescription drugs for outpatient use from participating manufactures (sic) at a very significant discount.

**ANSWER:** Defendants admit that the allegations of Paragraph 10 generally describe certain aspects of the Federal 340B Program, but deny the allegations fully or properly characterize recent legal developments surrounding the 340B Program, accurately reflect HRSA guidance, or Defendants' relationship to the 340B Program.

11. Under Indiana law (I.C. § 12-15-16-1, et seq.), health care providers qualifying as State of Indiana Medicaid Acute Disproportionate Share and Medicaid Safety Net Hospitals (DSH Providers) are eligible to receive Indiana Medicaid Disproportionate Share Hospital (State DSH) payments.

**ANSWER:** Defendants admit, in general, the representation of Indiana law regarding the DSH program; however, Defendants deny such allegations are relevant to St. Catherine's Hospital in connection with the issues in dispute in this case. Defendants also rely on their Motion for Partial Dismissal filed concurrently herewith.

12. To qualify as a "covered entity" under 340B, a hospital, like St. Catherine, must have a DSH adjustment percentage greater than 11.75%; this percentage takes into account the proportion of uninsured and Medicaid patients to commercially insured patients.

**ANSWER:** Defendants deny the allegations in Paragraph 12.

13. Defendant St. Catherine Hospital qualified for State DSH at all times relevant to this action.

**ANSWER:** Defendants deny the allegations in Paragraph 13 because they are confusing and inapplicable to the matters in dispute. Defendants also rely on their Motion for Partial Dismissal, filed concurrently herewith.

14.  St. Catherine's DSH adjustment percentage was particularly high compared to other hospitals within Community Foundation's umbrella. As a result, it was financially beneficial for other entities under Community Foundation's umbrella to steer Medicaid and other underinsured or uninsured patients to St. Catherine for treatment.

**ANSWER:**  Defendants deny the underlying allegations regarding DSH for purposes of Medicaid apply to Plaintiff's claims and rely on their Motion for Partial Dismissal, filed concurrently herewith.  For purposes of Medicare, Defendants admit that St. Catherine's Medicare DSH adjustment percentage was higher than the Medicare DSH adjustment percentage of the two other hospitals in the Community Healthcare System. Defendants also admit that there are financial benefits associated with the delivery of some services, including the dispensing or administration of drugs, within a healthcare system. Defendants further deny all remaining allegations and inferences in Paragraph 14.

15.  For prescriptions to qualify for the 340B Program the prescription must originate from a site that is under the reimbursable section of the hospital's medicare (sic) cost report or at registered off-site facilities, called "child sites," which can include free-standing outpatient facilities.

**ANSWER:**  Plaintiff's allegations in Paragraph 15 amount to a legal conclusion, which do not require a response; to the extent a response is required, Defendants note that Plaintiff has significantly oversimplified and distorted the legal intricacies of the 340B program and thus, Defendants deny the allegations in Paragraph 15.

16.  To qualify for the 340B program these child sites must not submit their own cost reports using a different Medicare provider number than their "parent 340B-eligible hospital."

**ANSWER:** Because the allegations in Paragraph 16 reference, rely on, and result from the misstatements and misunderstandings outlined in Paragraph 14, Defendants deny the allegations in Paragraph 16.

17.  All child site clinics must register as child sites of the parent 340B-eligible hospital in order to issue qualifying prescriptions under the 340B program.

**ANSWER:** Defendants deny the allegations in Paragraph 17.

**B.    Defendants' Operation of its 340B Program**

18.  The Plaintiff in this action is the former Director of Pharmacy for the Defendant St. Catherine Hospital.

**ANSWER:** Defendants admit the allegations in Paragraph 18.

19.  The 340B law prohibits "diversion" which forbids covered entities from reselling or otherwise transferring discounted drugs purchased under 340B to anyone but their own patients, or from using 340B drugs in an inpatient setting.

**ANSWER:** The allegations in Paragraph 19 amount to conclusions of law, which do not require a response; to the extent a response is required, Defendants admit the 340B drug program prohibits "diversion," but note that the Plaintiff's allegations regarding "diversion' are legally insufficient and confusing; accordingly, Defendants deny the remaining allegations in Paragraph 19.

20.  As early as 2014 Plaintiff became aware that the previous pharmacy director had committed 340B diversion and Plaintiff wanted to self-report the incidence to the Health Resources

& Services Administration but was instructed not to by her superior, Elizabeth Yee, who was the

Vice President of Ancillary Systems with defendant Community Foundation.

**ANSWER:** Defendants deny illegal conduct under the 340B Program. Defendants further

lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in Paragraph 20.


21.   In early 2019 physician's practices that had been listed under St. Catherine Hospital's

Medicare cost report were reorganized into a new entity named 219 Health Network, Inc.

**ANSWER:** Defendants admit the existence of an entity, 219 Health Network, Inc., deny

any allegations that infer illegal or improper conduct, and deny all remaining allegations in

Paragraph 21.


22.   Leo Correa, the Chief Executive Officer ("CEO") of Defendant St. Catherine

Hospital, started 219 Health Network, Inc., as a federally qualified health center ("FQHC")

because FQHC's qualify for a higher physician reimbursable fees than hospitals like St. Catherine

Hospital would for physician visits.

**ANSWER:** Defendants admit that 219 Health Network, Inc. is a federally qualified health

center. Plaintiff's allegations in Paragraph 22 regarding FQHC programs amount to a legal

conclusion to which a response is not required, and to the extent a response is required, Defendants

note the confusing nature of the allegations, and therefore, deny the allegations. Defendants deny

the remaining allegations in Paragraph 22.


23.   During the course of her employment with defendants, Plaintiff reasonably believed

that FQHC regulations prohibited Hospitals from owning FQHCs. Therefore, since 219 Health

Network was not a child site of St. Catherine Hospital or did not meet other criteria for the 340B Program, plaintiff believed that qualifying patients and/or prescriptions of 219 Health Network through St. Catherine Hospital's 340B Program violated the terms of that program.

**ANSWER:** To the extent Plaintiff's allegations in Paragraph 23 amount to a legal conclusion, such allegations require no response; and to the extent a response is required, Defendants deny Plaintiff's legal explanation and inferences. Defendants lack knowledge or information sufficient to form a belief about the truth as to what Plaintiff believed. Defendants admit that 219 Health Network was not a child site of St. Catherine Hospital. Defendants deny the remaining allegations of Paragraph 23.


24.   Beginning in March of 2019, Plaintiff was being pressured by the Defendants' administrators, namely Leo Correa (St. Catherine CEO), Lauren Trumbo (St. Catherine CFO) and Elizabeth Yee (Community Foundation Ancillary Systems VP), to qualify patients of 219 Health Network under St. Catherine's 340B Program.

**ANSWER:** Defendants admit that, as a general proposition, some patients of 219 Health Network could reasonably be considered patients of St. Catherine Hospital for purposes of the 340B program. Defendants deny any allegations and any inferences that Defendants acted improperly or fraudulently regarding the 340B program. Defendants lack knowledge and information sufficient to form a belief about the truth of the remaining allegations in Paragraph 24.


25.   Based on her understanding of the relevant laws and regulations, Plaintiff believed that patients being sent to her by Community Hospital CEO Lou Molina to be provided with discount drugs through St. Catherine's 340B Program, were ineligible under that program.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief as to the truth of what Plaintiff claims she believed at the time. Defendants deny all remaining allegations and inferences in Paragraph 25.

26.  [The text of Paragraph 26 is sealed pursuant to the Court's Order of June 6, 2022 (DE #30)].

**ANSWER:**  (Redacted)



27.  [The text of Paragraph 27, together with Plaintiff's Exhibit 1, is sealed pursuant to the Court's Order of June 6, 2022 (DE #30)].

**ANSWER:**  (Redacted)



28.  The prescriptions that the Plaintiff was asked to qualify were coming from 219 Health Network which is a different entity outside of St. Catherine Hospital's main facility or registered child site and thus did not qualify for the 340B Program.

**ANSWER:**  The allegations in Paragraph 28 amount to a legal conclusion and thus, do not require a response. To the extent a response is required, Defendants admit that 219 Health Network and St. Catherine Hospital are separate entities, and deny the legal conclusions stated by Plaintiff. Defendants deny they asked Plaintiff to engage in illegal or improper activity, and deny the remaining allegations in Paragraph 28.

29.    During a meeting that took place on May 13, 2019 involving Plaintiff and Leo Correa, Leo Correa was informed of [remaining text is sealed pursuant to the Court's Order of June 6, 2022 (DE #30)].  During the weeks immediately preceding this meeting, the CFO Lauren Trumbo and VP Elizabeth Yee, and staff had been made aware of [remaining text is sealed pursuant to the Court's Order of June 6, 2022 (DE #30)].

**ANSWER:**  (Partially Redacted) Defendants admit that Plaintiff, in her role as Director of Pharmacy, communicated with Leo Correa, Lauren Trumbo, and Elizabeth Yee, ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████

30.    Up to this point, Plaintiff's employment evaluations were all exceptional. In her most recent evaluation of July, 2019, she was scored as a "Role Model" – the highest score available – in nearly all categories evaluated, and in her overall performance. She was described as "a valuable leader of SCH hospital. Her contribution to the growth of 340B and Retail Pharmacy are very much appreciated by the hospital Administration. She has represented CHS pharmacy well in the State of Indiana. Her leadership is recognized statewide."

**ANSWER:** Defendant St. Catherine Hospital admits that Plaintiff's employment evaluations reflected St. Catherine Hospital's general assessment that Plaintiff was an excellent employee for most of her employment with St. Catherine Hospital. Co-Defendant CFNI lacks specific knowledge or information sufficient to form a belief about Plaintiff's job performance. All Defendants lack knowledge or information sufficient to form a belief about the truth of the specific language and context of the allegations in Paragraph 30.

31. Despite receiving [the remaining text of the first clause of paragraph 31 is sealed pursuant to the Court's Order of June 6, 2022 (DE #30)], and despite being recognized in her July, 2019 evaluation for her knowledge of the 340B program, Plaintiff was still pressured to qualify patients whom she believed were being impermissibly steered to St. Catherine Hospital at the direction of CEO Leo Correa. In an email to Plaintiff dated August 22, 2019, Leo Correa stated, "patients should be steered to St. Catherine Hospital because of the financial significance associated with our 340B program that ultimately benefits our system." A true and accurate copy of this e-mail is attached to this Complaint as Plaintiff's Exhibit 2 and incorporated herein by reference.

**ANSWER:** (Partially Redacted) ██████████████████████████████ ██████████████████████████████. Defendants admit that Exhibit 2 is an accurate copy of an e-mail from CEO Leo Correa, and further deny any legal conclusions and inferences therefrom. Defendants deny all remaining legal conclusions and factual allegations of Paragraph 31.

32. Plaintiff was regularly emailed by senior management of St. Catherine Hospital to qualify patients into the 340B Program whom she believed were ineligible so that St. Catherine Hospital could purchase expensive drugs at 340B discounts.

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of what Plaintiff believed, and deny that Plaintiff's alleged belief was reasonable under the circumstances. Defendants deny the remaining allegations in Paragraph 32.

33. When Plaintiff advised senior management of both CFNI and SCH, including Leo Correa, of her belief that steering of patients was prohibited by federal law, and that she therefore could not qualify such patients for the 340B Program, Leo Correa's attitude toward Plaintiff became increasingly negative and he, along with other senior management began attempting to bypass Plaintiff to qualify these patients or prescription for coverage under St. Catherine's 340B Program.

**ANSWER:** Defendants deny the allegations in Paragraph 33.

34. On September 9, 2019, Plaintiff discovered that her superiors were contacting her staff to qualify patients for the 340B Program after Plaintiff had refused to qualify them.

**ANSWER:** Defendants deny they facilitated the improper or illegal qualification of patients under the 340B program at St. Catherine. Stating further, Defendants lack knowledge and information sufficient to form a belief about the truth of Plaintiff's beliefs, conduct, and the timing of Plaintiff's alleged conduct. Defendants deny the remaining allegations of Paragraph 34.

35. On September 10, 2019, Plaintiff emailed CFO Lauren Trumbo regarding Plaintiff's concerns about the possibility of being audited for non-compliance with the 340B Program. A true

13

and accurate copy of this e-mail is attached to this Complaint and incorporated herein by reference as Plaintiff's Exhibit 3.

**ANSWER:** Defendants admit that Plaintiff e-mailed CFO Lauren Trumbo on or about September 10, 2019 and that Exhibit 3 represents a true and accurate copy of such e-mail. Defendants lack knowledge and information sufficient to form a belief about the truth of Plaintiff's thoughts, intent, and concerns, or the content of Exhibit 3. Defendants deny the remaining allegations in Paragraph 35.

36.   As early as 2018, Plaintiff requested that the St. Catherine Hospital purchase "Epic 340B Management Software" to better keep track of the patients being qualified by St. Catherine Hospital. In the absence of such software, 340B compliance had to be confirmed by manually checking pharmacy and hospital data.

**ANSWER:** Defendants admit that Plaintiff requested purchase of "Epic 340B Management Software." Defendants deny that 340B compliance had to be confirmed manually without the requested software, and further state that alternative software was available to be used at St. Catherine Hospital; and further, that such availability and use would have negated any need for manual intervention. Defendants also deny the allegations that infer Defendants needed "to better keep track of the patients being qualified by St. Catherine Hospital." Defendants lack knowledge and information sufficient to form a belief about the truth of the timing of Plaintiff's request or requests.

37.   This purchase request was denied to Plaintiff, forcing her and her staff to continue to manually check records to avoid improperly qualifying patients into the 340B Program.

**ANSWER:** Defendants admit the requested purchase was denied. Defendants deny that Plaintiff and her staff were required to perform manual checks. Defendants deny any improper qualification of patients and deny the remaining allegations in Paragraph 37.

38. The absence of adequate software to track 340B compliance required manual manipulation, including overrides of the existing software. Therefore, to confirm accuracy in 340B compliance, Plaintiff and/or her staff performed monthly audits of the system to catch ineligible 340B prescriptions that would otherwise have been approved. These audits would disclose regular errors which Plaintiff sought to correct through improved software.

**ANSWER:** Defendants deny "the absence of adequate software," deny alleged non-compliance with the 340B program, and deny that manual manipulation of existing software was required. Defendants further deny the inference that "monthly audits" were uncommon or inappropriate. Defendants also deny the inference of improper or illegal approval of 340B-eligible prescriptions, and deny any inference that "regular errors" resulted from Defendants' actions. Defendants admit that Plaintiff sought different software, and deny that such software was necessary or required. Defendants lack knowledge and information sufficient to form a belief about the truth of the extent to which Plaintiff' performed "monthly audits" and about the truth of Plaintiff's efforts "to correct" supposed "regular errors." Plaintiffs deny the remaining allegations in Paragraph 38.

39. On September 20, 2019, at the annual 340B meeting for re-certification, policy approval, and audits finding, the following occurred:

a. Plaintiff presented new revised audit finding policies and process improvement initiatives which were all approved by the CFO, VP and corporate compliance manager.

15

b.      Plaintiff once again reminded senior management of her position that the physician practices that had moved to 219 Health Network did not qualify for St. Catherine Hospital's 340B program.

c.      Plaintiff asked the CFO, VP and corporate compliance officer if they had any questions, concerns, or recommendation of her 340B compliance initiatives.

A true and accurate copy of the 340B Annual Recertification meeting Agenda, signed by Plaintiff, Lauren Trumbel, Elizabeth Yee and Stephanie Mitchell and dated 9/20/19 is attached to this Complaint and incorporated herein by reference as Plaintiff's Exhibit 4.

**ANSWER:** Defendants deny Plaintiff's assertion of the legal requirements of and penalties associated with the federal 340B program. Defendants deny any inferences or suggestions of non-compliance with the 340B program.  Defendants lack knowledge and information sufficient to form a belief about the truth of the precise timing of Plaintiff's alleged statements. Defendants admit that regular meetings with Plaintiff occurred, including a meeting on or about September 20, 2019, but Defendants lack knowledge and information sufficient to form a belief about the truth of Plaintiff's statements, intent, actions, or concerns. Defendants further admit that Plaintiff's responsibilities included seeking regular process improvements. Defendants admit that Exhibit 4 is an accurate copy of a document regarding a meeting regarding the 340B program, but lack knowledge and information sufficient to form a belief about the truth of the remaining allegations in Paragraph 39.

40.   On September 24, 2019, Plaintiff met separately with the CEO, Leo Correa, to discuss all of the matters discussed at the September 20, 2019 meeting.

**ANSWER:**  Defendant CFNI lacks knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 40.  Defendant St. Catherine Hospital admits that

Plaintiff and Mr. Correa met regularly to discuss Plaintiff's job responsibilities, as well as matters discussed at regularly scheduled meetings, but lacks information or knowledge sufficient to form a belief about the truth of the allegations regarding the precise topics discussed on September 20, 2019 and September 24, 2019.

41.   At no time during the September 20 or 24, 2019 meetings did the CFO, VP, CEO, or any other corporate compliance officer raise any objections or concerns regarding Plaintiff's handling of the 340B Program, but rather complimented Plaintiff for her proposed plans.

**ANSWER:** Defendants lack information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 41.

42.   However, in the days that followed these meetings, when Plaintiff continued to voice concerns about St. Catherine Hospital's 340B compliance, senior management began taking actions against Plaintiff.

**ANSWER:** Defendants deny the allegations in Paragraph 42.

**C.    Retaliation against Plaintiff.**

43.   On October 8, 2019, Lauren Trumbo, the CFO sent an email to Plaintiff expressing concern that supply costs have gone up and whether Plaintiff had changed who qualifies for the 340B Program. A true and accurate copy of this e-mail is attached to this Complaint as Plaintiff's Exhibit 5 and incorporated herein by reference.

**ANSWER:** Defendants admit that CFO Lauren Trumbo sent an e-mail to Plaintiff, and that a copy of the referenced e-mail is attached as Exhibit 5.  Defendants deny any inferences

regarding improper or illegal management of the 340B program and deny the remaining allegations in Paragraph 43.

44.   Supply chain cost had gone up because Plaintiff could not qualify patients from 219 Health Network for the 340B Program [the remaining text of the first sentence of paragraph 44 is sealed pursuant to the Court's Order of June 6, 2022 (DE #30].   Consequently St. Catherine Hospital had to buy higher priced drugs for these patients.

**ANSWER:** (Partially  Redacted)  Defendants  admit  that  St. Catherine  Hospital experienced increased costs. ████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

45.   At the time Lauren Trumbo sent Ex. 5, she was aware of [the remaining text of the first sentence of paragraph 45 is sealed pursuant to the Court's Order of of (sic) June 6, 2022 (DE #30] and that this was the reason Plaintiff would not qualify the 219 Health Network patients for the 340B program.

**ANSWER:**  (Redacted) ████████████████████████████████

████████████████████████████████████████████

Defendants deny the remaining allegations in Paragraph 45.

46.   Plaintiff told Lauren Trumbo directly that [the remaining text of paragraph 46 is sealed pursuant to the Court's Order of of (sic) June 6, 2022 (DE #30)].)

**ANSWER:**  (Redacted) ████████████████████████████████

████████████████████████████████████████████

18

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

47.   Despite this, Lauren Trumbo continued to push Plaintiff to qualify 219 Health Network Patients.

**ANSWER:** Defendants deny the allegations in Paragraph 47.

48.   CFO Lauren Trumbo wanted Plaintiff to qualify the patients from 219 Health Network for the 340B Program for a year.

**ANSWER:** Defendants deny that CFO Lauren Trumbo acted outside of legally accepted practices of the 340B program, and deny that Ms. Trumbo pressured Plaintiff to engage in illegal or improper conduct. Defendants deny the remaining allegations of Paragraph 48.

49.   Plaintiff responded that this could not be done since most prescriptions written from the 219 Health could not qualify for the 340B Program and auditors look for, and will disqualify such claims.

**ANSWER:** Defendants deny that Plaintiff understood the legal requirements and implications regarding 219 Health Network prescriptions and the 340B program, and deny any inferences that Defendants acted illegally or improperly.  Defendants lack sufficient information or knowledge sufficient to form a belief about the truth of what, whether, when, and to whom Plaintiff responded. Defendants deny the remaining allegations in Paragraph 49.

50. On October 10, 2019, Plaintiff and Zorana Dypkowski, the manager of the retail pharmacy, had a meeting with Lauren Trumbo where they both showed Lauren basic rules of the 340B Program and stated that they could not legally qualify most patients from 219 Health Network.

**ANSWER:** Defendants admit that on or about October 10, 2019, Plaintiff and Ms. Dypkowski met with Ms. Trumbo. Defendants deny that Plaintiff and Ms. Dypkowski properly understood the "basic rules" of the 340B program, and deny they had the capability to address whether they could "legally qualify" certain patients. Defendants deny any allegations or inferences of wrongdoing, and deny the remaining allegations of Paragraph 50.

51. Lauren Trumbo stated that she would take the information under consideration and then let the Plaintiff and Zorana know how to proceed.

**ANSWER:** Defendants restate their answer to Paragraph 50, and deny that Plaintiff and Zorana properly understood the legal requirements and implications regarding 219 Health Network prescriptions and the 340B program. Defendants deny the accuracy of the information referenced in Paragraphs 50 and 51. Defendants further lack information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 51.

52. On October 15, 2019, CEO Leo Correa called the Plaintiff in for a meeting to discuss the matter of qualifying 219 Health Network patients.

**ANSWER:** Defendants admit that on or about October 15 2019, Mr. Correa met with the Plaintiff regarding the St. Catherine Hospital's Pharmacy and the 340B program. Defendants deny the remaining allegations of Paragraph 52.

53.   When Plaintiff attempted to explain to Leo Correa why 219 Health Network patients could not be qualified through the 304B (sic) program, he became noticeably hostile towards Plaintiff – ordering her to qualify the patients and stating that either she get her pharmacy manager and staff to qualify patients from 219 Health or that he would find another pharmacy director who will. Plaintiff took this statement as a threat that she would be fired if she did not commit fraud against the 340B Program.

**ANSWER:** Defendants admit that Mr. Correa asked Plaintiff about unapproved changes in the 340B program. Defendants deny Plaintiff's characterization of the substance of the discussions. Defendants lack information or knowledge sufficient to form a belief about the truth about how Plaintiff interpreted the discussion, but deny that any representative of Defendants pressured Plaintiff to commit fraud or act improperly.  Defendants further deny that fraud was committed, and deny the remaining allegations in Paragraph 53.


54.   That same day the Plaintiff reported CEO Leo Correa's threat to fire her to Lauren Trumbo, the CFO, who told Plaintiff that she was over-reacting and to let him calm down and she would talk to him.

**ANSWER:** Defendants deny the allegations in Paragraph 54.


55.   Later that night, at an award dinner for Don Fesco (sic) at which Plaintiff and Leo Correa were in attendance, Leo Correa said to Plaintiff in the presence of others "Koula, why do you look so upset? You worried about what pharmacist I'm going to fire next?" which statement was taken by Plaintiff as another threat.

**ANSWER:** Defendants deny the allegations in Paragraph 55.

56. The following day, October 16, 2019, Plaintiff discussed Leo Correa's threat again with CFO Lauren Trumbo, and also reported it to VP Elizabeth Yee. Both responded that the Plaintiff ought not to worry, and they would speak to Leo Correa about the threat.

**ANSWER:** Defendants admit that Plaintiff appeared to be worried, but deny Plaintiff's allegations as to the reason for her concern. Defendants deny Plaintiff's characterization of a "threat." Defendants further state that Plaintiff appeared worried after she was questioned about her handling of the 340B program, including making changes without approval, and initiated apparently by Plaintiff and by co-worker Zorana Dypkowski. Defendants lack information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 56.

57. On October 16, 2019, Plaintiff was part of a conference call with Leo Correa and several other executives from Defendants, to discuss what originated as a prescription for Dr. Kumar, Chief Medical Officer for Community Foundation, which Dr. Kumar and the executives wanted approved under 340B. Plaintiff explained that in order for this script to qualify under 340B the patient and the person writing the script had to meet the criteria for 340B in St. Catherine's retail pharmacy. Despite the fact that this prescription was originally written by a doctor unaffiliated with St. Catherine Hospital, which disqualified the prescription from coverage under St. Catherine's 340B Program, Plaintiff was instructed to approve the prescription under 340B. Plaintiff told the parties on the conference call that the prescription did not qualify unless all 340B requirements were met, but Leo Correa told the group that all employee scripts should qualify for 340B. Leo Correa sent an e-mail regarding his position, a true and accurate copy of which is attached to this Complaint and incorporated herein by reference as Plaintiff's Exhibit 6.

**ANSWER:** Defendants admit that Plaintiff, along with other representatives from Defendants, participated in a conference call on or about October 16, 2019 to address multiple

22

issues, including compliance with the 340B program. Defendants deny Plaintiff's representations regarding her understanding of the legalities of the 340B program. Defendants also deny they engaged or sought to engage in improper or illegal conduct under the 340B program, and deny they pressured or instructed Plaintiff to engage in improper or illegal conduct. Defendants admit that Leo Correa sent an email to certain individuals regarding regulations governing 340B programs, and that a copy of the e-mail is attached. Defendants deny Plaintiff's characterization and inferences of alleged illegal conduct, and deny the remaining allegations of Paragraph 57.

58.   [The text of Paragraph 58, together with Plaintiff's Exhibit 7, is sealed pursuant to the Court's Order of of (sic) June 6, 2022 (DE #30)].

**ANSWER:**  (Redacted) ███████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████

59.   Following this conference call, Leo Correa again threatened Plaintiff with firing.

**ANSWER:**  Defendants deny the allegations in Paragraph 59.

60.   In the days that followed, Plaintiff was preparing documents to prove to Lauren Trumbo and Leo Correa that she could not legally qualify the patients from 219 Health Network.

**ANSWER:**  Defendants lack information or knowledge sufficient to form a belief about the truth of the allegations in Paragraph 60.

61. Plaintiff presented her findings to Elizabeth Yee on October 18, 2019.

**ANSWER:** Defendants deny Plaintiff's representations as to the presentation of "her findings." Defendants lack information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 61.

62. On October 23, 2019, Plaintiff was called into Human Resources to meet with the Director of Human Resources, Diana Meyers and her assistant, Olivia. She was told that they were looking into some recent "happenings" in the 340B Program. At this meeting, Plaintiff advised the HR Director about the threats made by Leo Correa and requested that the problem solving procedure under the defendant's corporate policy be instituted. Part of that policy required that Plaintiff be provided with a complaint form to start an investigation. Plaintiff also requested to have a meeting with the head of corporate compliance and the Vice President of Human Resources to explain the problems she was having with Leo Correa. Ms. Meyers promised, but failed, to provide the complaint form to Plaintiff.

**ANSWER:** Defendants admit that Plaintiff met with Dianna Myers on or about October 23, 2019; and further admit that Olivia Groesche (Ms. Myers' assistant) was present, but deny Ms. Groesche actively participated in the meeting. Defendants admit that Ms. Myers advised Plaintiff that the purpose of the meeting was to discuss unauthorized changes made to the 340B process, and further state that Plaintiff was unable to explain the changes. Defendants admit that Plaintiff told Ms. Myers of a conversation with Leo Correa, but deny the characterization as outlined in Paragraph 62 (referencing the allegations in Paragraph 53). Defendants admit that Plaintiff asked to meet with multiple individuals, including the Vice President of Human Resources, and Defendants further state that Plaintiff asked that others (including Mr. Correa) participate in the meeting. Defendants deny that Plaintiff wanted the meeting "to explain the problems she was

having with Leo Correa." Defendants admit that Plaintiff requested a complaint form. Defendants deny the remaining allegations of Paragraph 62.

63.    On Friday, October 25, 2019, Plaintiff was recognized at an awards ceremony held by the Indiana Hospital Association, where she awarded the State of Indiana Caregiver of the Year Award. Elizabeth Yee introduced Plaintiff at this awards ceremony and praised her performance, stating, *inter alia*: "Koula leads by example, goes above and beyond and true is a great asset to Community Healthcare System."

**ANSWER:** Defendants admit that on October 24, 2019, Plaintiff received an award from the Indiana Hospital Association and that Elizabeth Yee introduced Plaintiff as part of the event. Defendants lack information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 63.

64.    On Saturday, October 26, 2019, Plaintiff reported CEO Leo Correa's above-described conduct to the Corporate Compliance hotline.

**ANSWER:** Defendants admit that Plaintiff made a complaint about Leo Correa to the organization's compliance hotline. Defendants deny that Mr. Correa made an illegal request or pressured Plaintiff to act in contravention of the law.

**D.    Plaintiff is Fired.**

65.    Plaintiff was off work on Monday and Tuesday, October 28-29, 2019 due to a family emergency. Plaintiff properly scheduled off for this leave.

**ANSWER:** Defendants admit that Plaintiff did not work on October 28 and October 29, 2019. Defendants further state that Plaintiff called off on those days, and deny that she had

previously scheduled the time off. Defendants lack information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 65.

66.    On Monday, October 28, 2019 – three days after praising Plaintiff's performance and two days after Plaintiff filed her formal complaint against Leo Correa – Defendant, by Elizabeth Yee and Diana Meyers, issued Plaintiff a "Notice of Corrective Action," suspending Plaintiff pending investigation for alleged "Failure to follow approval process[,] Failure to adhere to compliance guidelines [and] Inconsistent facts and information provided." A true and accurate copy of this notice is attached to this Complaint and incorporated herein by reference as Plaintiff's Exhibit 8.

**ANSWER:** Defendants admit that on October 28, 2019, Plaintiff was suspended, pending investigation, for her "failure to follow approval process, failure to adhere to compliance guidelines, and/or inconsistent facts and information provided."  Defendants admit that a copy of the notice of corrective action has been included as Exhibit 8.  Defendants deny any improper conduct inferred in connection with the timing alleged in Paragraph 66. Defendants lack information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 66.

67.    Plaintiff did not receive this notice until it was handed to her on October 30, 2019. Instead, on October 28, 2019, Plaintiff received a call from a staff member advising that Zorana Dypkowski, Manager of the Retail Pharmacy at St. Catherine Hospital, who had also refused to qualify ineligible patients for the 340B program, had been suspended.

**ANSWER:** Defendants deny any illegal or improper actions regarding the 340B Program and deny that either Plaintiff or Zorana was suspended for refusal to engage in illegal or improper

actions. Defendants admit that it issued a notice of corrective action on October 28, 2019 to Plaintiff and to Zorana Dypkowski for the reasons as outlined in Exhibit 8. Defendants further state that it sent such notice to Plaintiff via FedEx and by e-mail on the same day. Defendants lack information or knowledge sufficient to form a belief about the truth as to when Plaintiff received the notice, and further deny the remaining allegations in Paragraph 67.

68. Plaintiff returned to work on October 30, 2019, unaware of the issuance of the "Notice of Corrective Action" on October 28, 2019. Plaintiff stopped at the front desk to call Diane Meyers to pick up the complaint form that she had been promised. Olivia answered, told Plaintiff that Diane was not in, and that Plaintiff should go about her workday and she would be called when Diane came into the office.

**ANSWER:** Defendants admit that Plaintiff appeared at St. Catherine Hospital on October 30, 2019, and that Olivia Groesche spoke with Plaintiff about the availability of Dianna Myers. Defendants lack information or knowledge sufficient to form a belief about the truth as to whether Plaintiff was aware of the "Notice of Corrective Action." Defendants deny the remaining allegations of Paragraph 68.

69. Following this, Plaintiff discovered that her key to the office and pharmacy did not work. Still unaware that she had been suspended, Plaintiff asked Olivia if there was a problem. Olivia took Plaintiff to her office, gave her the compliance form, at which point security arrived and publicly escorted Plaintiff from the building.

**ANSWER:** Defendants lack information or knowledge sufficient to form a belief about the truth of when and what Plaintiff discovered about her suspension, and access to her office. Defendants admit that Ms. Groesche provided a problem-solving form for Plaintiff, and that

Plaintiff was advised that Plaintiff should not be at St. Catherine Hospital. Defendants admit that two individuals escorted Plaintiff from the hospital. Defendants lack information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 69.

70. On November 12, 2019, Plaintiff was officially terminated for "failure to follow the approval process and failure to adhere to compliance guidelines." A true and accurate copy of this termination letter is attached to this Complaint and incorporated herein by reference as Plaintiff's Exhibit 9.

**ANSWER:** Defendants admit that effective November 12, 2019, Plaintiff's employment was terminated for "failure to follow approval processes and failure to obtain approval." Plaintiffs admit that Exhibit 9 is a copy of the letter sent to Plaintiff.

71. In February of 2020, the unemployment office ruled in Plaintiff's favor finding that the St. Catherine Hospital was unable to prove that Plaintiff mismanaged the 340B program, or committed any other action justifying termination as reported by the defendant.

**ANSWER:** Defendants admit that Plaintiff qualified for unemployment benefits, and further state that the legal threshold for obtaining benefits does not reflect on, prove, or disprove the underlying claims or defenses. Defendants deny the remaining allegations in Paragraph 71.

### E.    Conclusion

72. The statutes, regulations, and all interpretive materials created by the Government in relation to this grant program make clear that compliance with the 340B Program requires specific qualifications from both those writing prescriptions and those receiving prescriptions in order to

receive a discount on prescription drugs.  These qualifications are mandatory in order for the hospital to buy drugs at any discounted rate under this voluntary program.

**ANSWER:**  Defendants admit that, in general, the 340B Drug Program allows a covered entity access to certain pharmaceuticals at a discounted rate. Defendants deny the 340B Drug Program is a "grant program," denies Plaintiff's oversimplification of a complicated program, and denies the remaining allegations of Paragraph 72.

73.  The forgoing facts demonstrate that Defendants were aware of Plaintiff's belief that federal law and regulations prohibited most patients whose prescriptions were written by 219 Health Network providers from qualifying for coverage under St. Catherine's 340B program.

**ANSWER:**  Defendants deny the allegations in Paragraph 73.

74.  Nevertheless, Defendants' senior management attempted to force Plaintiff to qualify those patients through St. Catherine's 304B (sic) Program and fired her when she refused to do so.

**ANSWER:**  Defendants deny the allegations in Paragraph 74.

75.  Plaintiff's direct knowledge of Defendants' attempts to push through patients that she believed did not qualify for the 340B Program, coupled with Leo Correa's statement that if Plaintiff would not qualify these patients, he would find someone who would, lead Plaintiff to believe that her employment would be, and in fact was, terminated in retaliation for her refusal to cooperate with or participate in senior management's attempt to qualify ineligible patients under the 340B Program.

**ANSWER:**  Defendants deny that it engaged in "attempts to push through patients that did not qualify for the 340B program," deny that it engaged in illegal or improper activity regarding

the 340B program, and deny that it qualified otherwise illegible patients under the 340B program. Defendants further deny that Mr. Correa threatened Plaintiff if she did not engage in illegal conduct. Defendants deny the remaining allegations in Paragraph 75.

76.  As set forth above, Plaintiff notified Defendants' senior management multiple times of her belief that defendants either had or were attempting to qualify ineligible patients or prescriptions under the 340B program, and in retaliation Defendants terminated Plaintiff's employment without just cause.

**ANSWER:**  Defendants deny the allegations in Paragraph 76.

77.  Plaintiff has suffered severe emotional distress for the deliberate behavior of the senior staff of St. Catherine Hospital.

**ANSWER:**  Defendants deny that they acted inappropriately or illegally toward Plaintiff. Defendants lack information or knowledge sufficient to form a belief about the truth of Plaintiff's emotional distress, and deny the remaining allegations of Paragraph 77.

78.  Plaintiff has suffered the loss of her position as Director of Pharmacy, lost wages and benefits of employment, suffered the embarrassment of being led out of her workplace by security, and suffered the inability to find comparable work, all due to Defendant's retaliatory conduct against her.

**ANSWER:**  Defendants admit that Plaintiff was dismissed from her positon as Director of Pharmacy. Defendants deny that it improperly or illegally retaliated against Plaintiff. Defendants deny that it is responsible for Plaintiff's ability or inability to find work.  Defendants lack

information or knowledge sufficient to form a belief about the truth of the remaining allegations of Paragraph 78.

## V. Claims

### Count I – Unlawful Retaliation Against Employee. 31 U.S.C. §3730(h)(1)

79.   As stated in paragraphs 8-78 of this Complaint, Plaintiff notified her superiors of her belief, including the grounds for that belief, that qualifying patients from the entity 219 Health Network for discounts under St. Catherine's 340B Program either had or would violate relevant federal law and regulations.

**ANSWER:** Defendants deny the allegations in Paragraph 79.


80.   On October 15, 2019, CEO Leo Correa, in a meeting with the Plaintiff during which Plaintiff reiterated her belief that qualifying 219 Health Network patients for discounts under St. Catherine's 340B Program would violate relevant federal law and regulations, Correa told Plaintiff that if she did not qualify these patients she would be fired. Similar threats were repeated over the following days.

**ANSWER:** Defendants deny the allegations in Paragraph 80.


81.   Leo Correa's threats of termination were in direct retaliation for Plaintiff's refusal to commit acts which Plaintiff reasonably believed would violate the laws and regulations governing the 340B Program.

**ANSWER:** Defendants deny the allegations in Paragraph 81.

82.   Within a few days after reporting CEO Leo Correa's threats, Defendant St. Catherine Hospital, by its Human Resources Director Dianna Myers, and Defendant Community Foundation, by its VP Elizabeth Yee, retaliated against Plaintiff by suspending and ultimately terminating her employment.

**ANSWER:**  Defendants deny the allegations in Paragraph 82.

83.   Defendants' suspension and subsequent termination of Plaintiff's employment were in direct retaliation for Plaintiff's refusal to commit acts which Plaintiff reasonably believed would violate the laws and regulations governing the 340B Program.

**ANSWER:**  Defendants deny the allegations in Paragraph 83.

84.   The Defendants violated the False Claims Act by retaliating against Plaintiff because of Plaintiff's attempts to follow the regulations of the 304B Drug Reimbursement Program in violation of 31 U.S.C. §3730(h)(1).

**ANSWER:**  Defendants deny the allegations in Paragraph 84.

**COUNT II – VIOLATION OF INDIANA MEDICAID FALSE CLAIMS
AND WHISTLE BLOWER PROTECTION ACT
UNLAWFUL RETALIATION AGAINST EMPLOYEE. I.C. 5-11-5.7-8**

85.   At all times relevant to this action, the State of Indiana was a participant in the federal Medicaid program and had on file a State Plan which was approved by the federal Department of Health and Human Services.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].

86.   At all times relevant to this action, St. Catherine Hospital had opted into the State of Indiana program by electing to "carve-in" its 340B drugs and bill Medicaid fee-for-service for drugs purchased at 340B prices.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].


87.   Part of Indiana's State Plan authorizes Indiana Medicaid to participate in both the 340B Program and the Medicaid Drug Rebate Program, 42 U.S.C. § 1396r-8, et seq., two programs that were established to help provide prescription drugs to the poor and underserved.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].


88.   The Medicaid Drug Rebate Program provides Indiana Medicaid with over fifty percent (50%) of the total Medicaid spending on drugs in the state.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].


89.   Drugs purchased through the 340B Program are not subject to rebates under the Medicaid Drug Rebate Program, 42 U.S.C. § 1396r-8, et seq.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].


90.   Any drug purchased improperly under the 340B Program deprives Indiana Medicaid of rebates to which Indiana Medicaid would otherwise be entitled but for the misuse of the 340B Program.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].

91. As detailed above, Defendants improperly steered Medicaid patients from other facilities to St. Catherine Hospital and improperly qualified Medicaid-eligible patients of 219 Health Network under the St. Catherine's 340B Program with the result that Indiana Medicaid lost substantial sums of money to which it would have otherwise been entitled under the Medicaid Drug Rebate Program.

**ANSWER:** The Court dismissed Count II of the Third Amended Complaint. [D.E. 91].

92. Defendants' actions, as set forth above, show, inter alia, that defendants "knowingly present[ed], or caused to be presented, a false or fraudulent claim for payment or approval" by Indiana Medicaid in violation of Ind.Code § 5-11-5.7-2(a)(1).

**ANSWER:** The Court dismissed Count II of the Third Amended Complaint. [D.E. 91].

93. As stated in paragraphs 8-78 of this Complaint, Plaintiff notified her superiors of her belief, including the grounds for that belief, that qualifying patients from the entity 219 Health Network for discounts under St. Catherine's 340B Program either had or would violate relevant federal law and state law and regulations.

**ANSWER:** The Court dismissed Count II of the Third Amended Complaint. [D.E. 91].

94. On October 15, 2019, CEO Leo Correa, in a meeting with the Plaintiff during which Plaintiff reiterated her belief that qualifying 219 Health Network patients for discounts under St. Catherine's 340B Program would violate relevant federal law and regulations, Correa told Plaintiff that if she did not qualify these patients she would be fired. Similar threats were repeated over the following days.

**ANSWER:** The Court dismissed Count II of the Third Amended Complaint. [D.E. 91].

34

95.   Leo Correa's threats of termination were in direct retaliation for Plaintiff's refusal to commit acts which Plaintiff reasonably believed would violate the laws and regulations governing the 340B Program.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].

96.   Within a few days after reporting CEO Leo Correa's threats, Defendant St. Catherine Hospital, by its Human Resource Director, Dianna Myers, and Defendant Community Foundation, by its VP Elizabeth Yee, retaliated against Plaintiff by suspending and ultimately terminating her employment.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].

97.   Defendants' suspension and subsequent termination of Plaintiff's employment were in direct retaliation for Plaintiff's refusal to defraud Indiana Medicaid by misusing the 340B Program.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].

98.   The Defendants violated the Indiana Medicaid False Claims and Whistle Blower Protection Act (I.C. 5-11-5.7-1-8) by terminating the Plaintiff's employment because of her attempts to follow the regulations of the 304B Drug Reimbursement Program and prevent Indiana Medicaid from losing rebate funds to which it would otherwise be entitled.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].

99.    Defendant's actions, as set forth above, were specifically intended to punish Plaintiff for exercising a statutorily-created duty to report violations of the 340B program to the appropriate officials.

**ANSWER:**  The Court dismissed Count II of the Third Amended Complaint.  [D.E. 91].


### COUNT III – DEFAMATION

100. Defendants defamed Plaintiff Kiriaki Koula Tsahas by intentionally and deliberately spreading invidious lies about the reason for Plaintiff's termination which has led to her having difficulty finding new employment.

**ANSWER:**  Defendants deny the allegations in Paragraph 100.


101. Defendant's Vice President Elizabeth Yee, Saint Mary Medical Center Pharmacy Director Michelle Myers and Director of Pharmacy for Community Hospital Elizabeth Clements told third parties that Plaintiff was terminated for 340B violations and/or for over qualifying ineligible patients to the 340B Program.

**ANSWER:**  Defendants deny the allegations in Paragraph 101.


102. Plaintiff, as a result of these false statements about the nature of her termination has had difficulty finding work.

**ANSWER:**  Defendants deny they have circulated any false statements regarding Plaintiff. Defendants lack information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 102.

103. Employers who had in the past attempted to hire the Plaintiff have subsequently refused to hire her after hearing about her termination and being escorted off the premises by security guards.

**ANSWER:** Defendants deny they engaged in improper or illegal conduct in Plaintiff's separation from employment. Defendants lack information or knowledge sufficient to form a belief about the truth of the remaining allegations in Paragraph 103.

104. St. Catherine Hospital through its corporate leadership intentionally humiliated the Plaintiff and spread or allowed the spread of lies about why her employment was terminated because Plaintiff would not qualify ineligible patients to the 340B Program.

**ANSWER:** Defendants admit that Plaintiff's employment was terminated. Defendants deny that it engaged in improper or illegal conduct in its administration of the 340B program, deny that St. Catherine Hospital's corporate leadership intentionally humiliated Plaintiff and deny it spread or allowed the spread of lies regarding Plaintiff, deny that it took any employment action in retaliation for Plaintiff's protected activity, and deny the remainder of any inferences or allegations in Paragraph 104.

## VI.  PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests this Court to find that the Defendants have violated the anti-retaliation provisions of the False Claims Act, and the derivative state law claims. Additionally, Plaintiff respectfully requests this Court to find that the Defendants damaged the Plaintiff as a result of their conduct. The Plaintiff prays that judgement be entered against the defendant for all applicable damages alleged in Counts I through III, including but not limited to the following:

(i)     Enter an Order requiring Defendants to reinstate Plaintiff into the position of Director of Pharmacy with the same seniority status that she would have had but for the discrimination;

(ii)    Award Plaintiff two (2) times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees;

(iii)   If reinstatement is impractical or impossible, award Plaintiff front pay and other legal and equitable relief in an amount and form to be determined at trial;

(iv)    Award Plaintiff compensatory damages for her pain, suffering, embarrassment and reputational damages in an amount to be determined at trial;

(v)     Order all other just and proper relief in favor of the Plaintiff.

## JURY DEMAND

Plaintiff hereby demands trial by jury upon all issues triable by Jury under the Federal Rules of Civil Procedure and applicable federal law.

## GENERAL DENIAL

To the extent that an answer or response may be required which is not set forth herein, Defendants deny any allegations and implications contained within Plaintiff's Complaint not expressly admitted, and denies that Plaintiff is entitled to relief under the law by Count II of her Second Amended Complaint.

## AFFIRMATIVE DEFENSES

1.      Plaintiff's allegations under Indiana Medicaid Law and Indiana common law under Frampton and McClanahan are inapplicable, and fail to state a claim upon which relief can be granted, and therefore, are subject to the Defendants' Motion for Partial Dismissal, filed concurrently herewith.

2.      Plaintiff's allegations fail because they are based on a misunderstanding or misinterpretation of federal law, the federal 340B Drug Program, and the compliance actions required therewith.

38

3.    Plaintiff's allegations fail because she did not have a reasonable belief that Defendants' actions were not in compliance with federal law.

4.    Defendants' actions toward Plaintiff were based on legitimate, non-retaliatory reasons.

5.    To the extent that Defendants made any statements regarding Plaintiff, such statements were true, in the course of employment, or otherwise protected by absolute or qualified privilege.

6.    Some or all of Plaintiff's claims may be barred or limited by the doctrine of after-acquired evidence and set-off doctrine.

7.    Subject to a reasonable opportunity to conduct discovery, Plaintiff's claims are limited by her unreasonable failure to mitigate her alleged damages.

8.    Plaintiff's claims for damages are limited by the U.S. Constitution, the Constitution of the State of Indiana, and any other applicable statute or law.

9.    Plaintiff's request for punitive and liquidated damages is barred or otherwise limited by Defendants' good faith efforts to comply with the law.

10.    Subject to a reasonable opportunity for investigation and discovery, some or all of Plaintiff's claims are barred by the doctrines of waiver, laches, estoppel, and/or unclean hands.

11.    Plaintiff's claims, in whole or in part, are barred because any alleged damages or injury were caused by her own actions or inactions.

## RESERVATION OF DEFENSES

Defendants intend to rely upon such other affirmative defenses as may become available or apparent during the course of investigation, discovery, or trial.  Defendants reserve the right to amend this Answer to assert such other defenses to which it may be entitled.

THEREFORE, Defendants respectfully request that the Court enter judgment against Plaintiff and in favor of Defendants, the Court dismiss Plaintiff's Complaint for Damages with prejudice, Defendants be awarded the fees and costs incurred in its defense of this matter, and Defendants be granted all other appropriate relief.

Date:  February 28, 2025

Respectfully submitted,

BARNES & THORNBURG LLP

/s/  Hannesson I. Murphy
Hannesson Murphy (25993-49)
11 S. Meridian Street
Indianapolis, IN 46204
Phone:  (317) 236-1313
Fax:      (317) 231-7433
Email:  hannesson.murphy@btlaw.com

Jeanine M. Gozdecki (16909-71)
Emily C. Lodge (38254-71)
201 South Main Street, Suite 400
South Bend, IN 46601
Phone:  (574) 233-1171
Fax:      (574) 237-1125
Email:  jeanine.gozdecki@btlaw.com
            emily.lodge@btlaw.com

*Attorneys for Defendants, Community Foundation of Northwest Indiana, Inc. and St. Catherine Hospital, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 28, 2025, a redacted copy of the foregoing Answer to Third Amended Complaint was filed electronically, and thus, delivered to all parties that have appeared in the case by operation of the Court's electronic filing system (CM/ECF). An unredacted copy of this filing will be sent by email to the Court and to counsel for Plaintiff at the address below:

     rickgikas@att.net

                                           */s/ Hannesson I. Murphy*